# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MONTWAY LLC d/b/a MONTWAY
AUTO TRANSPORT,

        Plaintiff,              Case No. 2:25-cv-12984

v.                          Hon. Brandy R. McMillion

BRYAN JOHNSTONE,         Magistrate Judge Anthony P. Patti

        Defendant.

## AMENDED OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 4)

Before the Court is Plaintiff Montway, LLC d/b/a Montway Auto Transport's (hereinafter, "Montway") Motion for Preliminary Injunction, filed September 26, 2025, as to Defendant Bryan Johnstone ("Johnstone"). *See generally* ECF No. 4. The Court heard oral argument on the motion on December 3, 2025. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** the motion for preliminary injunction.

## I.

Montway is an automobile transportation company that brokers vehicle shipments to a diverse range of clients, including car owners, auto dealerships, original equipment manufacturers, and others seeking automotive transportation

solutions.  ECF No. 1, PageID.3-4.  Bryan Johnstone worked for Montway as a Logistics Account Executive and Senior National Account Executive from January 2021 until his resignation in August 2025.  *Id.* at PageID.6-7, 10.

When Johnstone began working for Montway as a Logistics Account Executive, he was responsible for national fleet sales.  ECF No. 1, PageID.6; *see also* ECF No. 4, PageID.65.  His duties included maintaining customer relationships, coordinating auto-transport services, and serving as the primary point of contact between Montway and his respective clients.  ECF No. 1, PageID.6.  According to the Complaint, Johnstone's work required access to customer-specific information and Montway's internal business practices, including pricing structures and account details.  *Id*. at PageID.9.

At the outset of his employment, Johnstone entered into an Employment Agreement with Montway that contained three restrictive provisions relevant to this dispute: a noncompete clause, a non-solicitation clause, and a nondisclosure clause.  ECF No. 4, at PageID.56.  The noncompete provision restricted Johnstone from engaging in certain competitive activity for a period of one year following the termination of his employment.  *Id*. at PageID.73.  The non-solicitation provision prohibited him from soliciting or servicing Montway customers he worked with during his employment, and the nondisclosure provision prohibited the use or disclosure of Montway's confidential information.  *Id*. at PageID.67-68.  Montway

2

alleges that Johnstone resigned in August of 2025 and subsequently accepted employment in the auto-transport brokerage industry with competitor ACI Transportation, LLC ("ACI"). *Id*. at PageID.68.

Based on these facts, Montway filed a breach of contract action against Johnstone on September 19, 2025, for his alleged violations of the Employment Agreement. *See* ECF No. 1. They subsequently filed the instant motion for a preliminary injunction on September 26, 2025, seeking to enjoin Johnston from any further violations of the contractual provisions at issue pending the case's adjudication on the merits. *See* ECF No. 4.

## II.

The Court recognizes that a preliminary injunction is "an extraordinary remedy." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566 (6th Cir. 2002). In deciding whether to issue a preliminary injunction, the Court evaluates four factors:

1. Whether the movant has shown a strong likelihood of success on the merits;

2. Whether the movant will suffer irreparable harm if the injunction is not issued;

3. Whether the issuance of the injunction would cause substantial harm to others; and

4. Whether the public interest would be served by issuing the injunction.

*Id*. at 573. These *factors* are not prerequisites that must be met; rather, they should

be balanced in determining whether to issue the preliminary injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). However, the Sixth Circuit has found that the most weight should be given to two factors: "likelihood of success on the merits" (*Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir.2000)), and "irreparable harm" which is often indispensable (*Fischer v. Thomas*, 78 F.4th 864, 868 (6th Cir. 2023)).

### III.

In requesting a preliminary injunction in this matter, Montway seeks to enjoin Johnstone from the following:

1. Working for ACI or any competitor in any capacity falling within "Prohibited Activity" for the remainder of the 12-month restricted period.
2. Soliciting, servicing, or otherwise doing business with any Montway customers he handled while employed.
3. Using or disclosing Montway's confidential information, including pricing, customer lists, and internal strategies.

*See generally* ECF No. 4. The Court finds these requests to address the three separate provisions of Montway's Employment Agreement, but the latter two can be addressed together.

### I.     Noncompete Provision

Montway seeks its injunction based on the theory that Johnstone's current employment with ACI is a violation of the noncompete provision of his employment agreement. ECF No. 4, PageID.70-71. Under Michigan law, noncompete clauses

4

are enforceable only if reasonable in duration, geographic scope, and line of business, and tied to a legitimate business interest. *See* MCL 445.774a; *St. Clair Med. v. Borgiel*, 270 Mich. App. 260 (2006). If covenants, as written, are unreasonable or overbroad, they may be narrowed. *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 677 (E.D. Mich. 2015) ("Michigan law commands the courts to narrowly construe restrictive covenants."). Considering that, the Court evaluates the preliminary injunction factors as follows.

First, the Court finds that Montway has not demonstrated that the nationwide scope of its non-compete request is reasonable, as applied. Montway's own account list shows Johnstone handled a book of business with clients predominantly in the western region of the United States. Under MCL 445.774a and cases such as *Borgiel* and *Lowry*, geographic scope must be connected to the territory in which the employee cultivated goodwill. The record presently suggests that Montway's request that Johnstone not work for ***any*** competitor (ACI or otherwise) is overbroad. There most certainly could be competitors that service only the eastern region of the United States. Thus, the Court finds that Montway is not likely to succeed on the merits, and this factor weighs against issuing the requested injunction.

Second, the Court recognizes that a loss of goodwill is irreparable harm, but Montway's showing here is largely inferential. Montway identifies a decline in revenue following Johnstone's departure, but the causal link between that decline

5

and Johnstone's actual departure remains speculative. And, by its own admission, Montway is able to identify the amount of loss it attributes to Johnstone's departure. *Tenke* recognizes irreparable harm where that harm is tied to the breach. 511 F.3d at 550. However, here, that link remains uncertain, so the Court finds that this factor, if anything, is neutral with respect to the requested injunction.

Third, in evaluating the risk of harm to others, the Court finds that Johnstone and his employer would be unduly harmed if the injunction is entered as requested. Enforcing the noncompete would likely remove Johnstone from his employment, and potentially the industry, for the duration of the restricted period. The Sixth Circuit cautions against restraints that exceed what is necessary to protect legitimate interests. *United States v. Miami Univ.*, 294 F.3d 797, 816 (6th Cir. 2002) ("If injunctive relief is proper, it should be no broader than necessary to remedy the harm at issue."). The hardship factor, therefore, weighs against enforcing the noncompete, as requested, at this stage.

Lastly, the public interest factor also weighs against broad injunctive relief. Public interest supports enforcement of reasonable covenants but disfavors overbroad restraints inhibiting competition and mobility. *Mapal*, 147 F. Supp. 3d at 677. Because enforceability is doubtful, this factor weighs against granting the injunction as requested.

While all the factors weigh against enforcement of the noncompete, as

6

requested, the Court recognizes that some form of injunctive relief can be fashioned to protect the status quo pending the outcome of this litigation. The Court finds the requested relief – prohibiting Johnstone from working at ACI or any other competitor – to be overbroad but believes restricting Johnstone's servicing of customers he previously worked on at Montway to be a reasonable restraint, pending the outcome of the litigation.

### II.     Non-solicitation and Nondisclosure Provisions

As to Montway's request to enjoin solicitation of its customers and disclosure of its confidential information, the Court finds that the preliminary injunction factors favor the requested relief. First, Montway has a likelihood of success on the merits in challenging these provisions in the employment agreement. Both of these provisions are more narrowly tailored and directly tied to legitimate interests in customer goodwill and confidential information. Because Michigan law consistently enforces such clauses (*see e.g., Borigel*), Montway's likelihood of success is significantly stronger here.

Second, however, the Court is not entirely persuaded that potential loss of customer relationships and misuse of confidential pricing information constitute irreparable harm that is not fully compensable by damages. Where the alleged harm is compensable by damages, injunctions are disfavored. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). Nevertheless, the Court is willing to accept

the potential loss of goodwill to protect Plaintiff's legitimate business interest and prevent disclosure of confidential information.

Third, in balancing the harms, the Court finds that targeted enforcement does not prevent Johnstone's continued employment at ACI and imposes substantially less hardship than enforcement of the noncompete. Lastly, the public interest favors enforcing reasonable confidentiality and customer-protection agreements to preserve the integrity of commercial relationships and to hold parties to the terms of the agreements for which they bargained. *Tenke*, 511 F.3d at 551. Public interest is therefore served by the requested injunction.

Therefore, with respect to the non-solicitation and nondisclosure provisions, the factors favor issuing the requested injunction.

**IV.**

Based on the foregoing, Plaintiff's Motion for a Preliminary Injunction (ECF No. 4) is **GRANTED IN PART and DENIED IN PART**. Accordingly, **IT IS HEREBY ORDERED** that Johnstone is enjoined from, directly or indirectly (including by use of other employees at ACI Transportation, LLC), the following conduct:

- Servicing or working on any customer account that Johnstone previously serviced while employed at Montway, which includes the accounts identified in Exhibit D to the Reply Declaration of Craig Bramer (*see* ECF No. 14-2).

- Soliciting, attempting to solicit, inducing to leave, or attempting to induce to leave any Montway customer that was serviced by Johnstone while employed at Montway; and

- Using, disclosing, or transmitting for any purpose any "Confidential Information" of Montway (as defined in the Employment Agreement).

Nothing in this Order shall be construed to limit any other ACI employee from acting on ACI Transportation's behalf, exclusive of Johnstone.

**IT IS FURTHER ORDERED** that nominal security is proper under Federal Rule of Civil Procedure 65(c), and therefore Plaintiff shall post a $500 security bond no later than December 31, 2025.

**IT IS FURTHER ORDERED** that any request for attorneys' fees and costs in pursing this injunction or entry of this Order is **DENIED**.

**IT IS FURTHER ORDERED** that this Order expires on **July 28, 2026**. And this action shall be automatically **DISMISSED WITH PREJUDICE** seven (7) days after the expiration of this Order, unless Good Cause to maintain this action is shown to exist. Good Cause includes, but is not limited to, any credible showing that Johnstone has failed to substantially comply with all the terms of this Order.

**IT IS SO ORDERED.**

Dated: December 18, 2025           s/Brandy R. McMillion
                                   BRANDY R. MCMILLION
                                   United States District Judge